IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KAREN ENDACOTT,

     Plaintiff,

v.                             Case No. 1:23-cv-01116-KG/DLM

WELLS FARGO BANK, N.A.,
JENNIFER HANSON, and,
JOHN & JANE DOES 1 through 5,

     Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Plaintiff's Corrected Motion to Remand, (Doc. 25), filed May 7, 2024.[1]  Defendants filed their Response, (Doc. 26), on May 20, 2024, and Plaintiff filed her Reply, (Doc. 28), on June 5, 2024.  Having considered the briefing and applicable law, the Court grants Plaintiff's Motion.

*I.*    *Background*

Ms. Endacott was a customer at Wells Fargo Bank where she had a savings and checking account.  (Doc.1-2) at 3.  Ms. Endacott also utilized Wells Fargo's online banking services.  *Id.*  On December 28, 2022, Wells Fargo allowed a fraudulent account to be opened in Ms. Endacott's name.  *Id.* at 4.  Ms. Endacott was not aware of the fraudulent account, and it was not apparent on her online bank account.  *Id.*  On or about March 20, 2023, Ms. Endacott had approximately $144,000 in her savings account and $10,500 in her checking account.  *Id.*  On that same day, Ms. Endacott discovered that her savings and checking accounts at Wells Fargo

---

[1] Although the correct avenue to request leave to amend a pleading is done through Federal Rule of Civil Procedure 15, the Court construes Plaintiff's Corrected Motion to Remand as a motion for leave to amend which appears unopposed by Defendants.

were being liquidated by an unknown person.  *Id.*  Ms. Endacott immediately notified Wells

Fargo which informed her it would investigate how the third account was created.  *Id.*

On March 23, 2023, Wells Fargo informed Ms. Endacott it was a Wells Fargo employee

who opened the fraudulent account.  *Id.* at 5.  On March 24, 2023, Ms. Endacott went to Wells

Fargo where she was shown her forged signature on an in-person cash withdrawal.  *Id.*  Ms.

Endacott requested Wells Fargo freeze all her accounts to prevent any additional withdrawals.

*Id.*  Defendant Hanson, a Wells Fargo Bank employee, informed Ms. Endacott her accounts

would be frozen.  *Id.*

On March 28, 2023, Wells Fargo admitted to Ms. Endacott that the fraudulent account

had been approved by the bank.  *Id.*  On April 4, 2023, Defendant Wells Fargo instructed Ms.

Endacott to go to a branch location to gather cashier's checks for the remaining funds in her

accounts.  *Id.*  When Ms. Endacott arrived at the Wells Fargo, Defendant Hanson unfroze the

accounts to create cashier's checks.  *Id.* at 6.  However, Defendant Hanson informed Ms.

Endacott that despite its earlier representations, Wells Fargo would not release any of her savings

funds or any of the remaining funds in her checking account.  *Id.*  Soon after, Wells Fargo

employees escorted Ms. Endacott and her husband out of the bank, "causing extreme emotional

distress." *Id.*  According to the Complaint, the Wells Fargo employees unfroze her accounts, but

did not re-freeze the accounts after refusing to give Ms. Endacott cashier's checks.  *Id.*  Because

the accounts were not frozen, the fraudsters liquidated the remaining funds from her accounts.

*Id.* at 7.  On or about April 6, 2023, Ms. Endacott received an email from Wells Fargo informing

her that her accounts were $57,569.78 overdrawn.  *Id.*

Ms. Endacott requested Wells Fargo provide a complete set of banking statements,

however, Wells Fargo refused to provide the records.  *Id.*  Because of this, Ms. Endacott claims

she cannot precisely determine the full extent of the theft of her funds. *Id.* Now, Ms. Endacott

seeks damages for unfair or deceptive trade practices, intentional infliction of emotional distress

(IIED), breach of contract, breach of fiduciary duty, breach of covenant of good faith and fair

dealing, and negligence. *Id.* at 8–13. Ms. Endacott brought claims against Defendant Hanson

for IIED, breach of fiduciary duty, and negligence. *Id.* For purposes of this Order, however, Ms.

Endacott "concedes that she cannot show a cause of action on the breach of fiduciary claim."

(Doc. 25) at 4.

II.    *Analysis*

"It is well-established that statutes conferring jurisdiction upon the federal courts, and

particularly removal statutes, are to be narrowly construed in light of our constitutional role as

limited tribunals." *Pritchett v. Office Depot, Inc.,* 420 F.3d 1090, 1094–95 (10th Cir. 2005)

(citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09 (1941); *United States ex rel.*

*King v. Hillcrest Health Ctr.,* 264 F.3d 1271, 1280 (10th Cir. 2001)). "All doubts are to be

resolved against removal." *Fajen v. Found. Reserve Ins. Co.,* 683 F.2d 331, 333 (10th Cir.

1982). "Notions of comity and federalism demand that a state court try its own lawsuits, absent

compelling reasons to the contrary." *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472,

1478 (10th Cir. 1990). "The burden of establishing subject-matter jurisdiction is on the party

asserting jurisdiction." *Montoya v. Chao,* 296 F.3d 952, 955 (10th Cir. 2002).

A. *Fraudulent Joinder*

To establish fraudulent joinder, Defendants must show either: "(1) actual fraud in the

pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action

against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir.

2013) (citation omitted). "The defendant seeking removal bears a heavy burden of proving

fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Id.*

3

(citation omitted).  The Tenth Circuit indicates fraudulent joinder must be "established with complete certainty upon undisputed evidence." *Smoot v. Chi., Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967).

A removing party must demonstrate there is "no possibility that [plaintiff] would be able to establish a cause of action against [the joined party]." *Montano v. Allstate Indem.*, 2000 LEXIS 6852, at *4 (10th Cir. 2000) (citations omitted).  "This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." *Id.* at *5.   Finally, the Court must remand the case if "any one of the claims" against the non-diverse defendant is "possibly viable." *Id.*

For purposes of this Order, the Court considers whether Ms. Hanson was fraudulently joined.  Accordingly, the Court should find fraudulent joinder only if there is "no possibility" of a claim against Ms. Hansen but must find her properly joined if there is any "possibly viable" claim against her.

### 1.   Intentional Infliction of Emotional Distress (IIED)

To establish a claim for IIED, a plaintiff must show (1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the plaintiff's mental distress. *Trujillo v. N. Arriba Elec. Coop., Inc.*, 2002-NMSC-004, ¶ 25.  Extreme and outrageous conduct is that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

4

The Court concludes Ms. Endacott has alleged a "possibly viable" claim for IIED against Ms. Hanson for four reasons. First, the Court finds a reasonable person could determine Ms. Hanson's conduct was extreme and outrageous. The complained-of conduct consists of Wells Fargo requesting Ms. Endacott go to a branch location to retrieve cashier's checks to prevent further theft. When Ms. Endacott arrived at Wells Fargo, however, Defendant Hanson refused to disperse the cashier's checks to Ms. Endacott, and instead had Ms. Endacott and her husband escorted out of the building. (Doc. 1-2) at 10. The Court finds that such conduct may be viewed as extreme and outrageous to a reasonable person, particularly because Ms. Endacott's money was actively being stolen from her Wells Fargo account. Thus, the first element of an IIED claim has been sufficiently alleged for purposes of the fraudulent joinder analysis.

Second, the Court determines that although Ms. Hanson's conduct may not have been intentional, it is possible she acted with reckless disregard of Ms. Endacott and her husband. Third, the Endacotts may well have experienced extreme and severe mental distress as a result of being escorted out of the bank without their funds after Wells Fargo specifically requested them to retrieve cashier's checks. Finally, should a reasonable person find Ms. Endacott's distress was extreme and severe, Ms. Hanson's conduct could have clearly caused the distress. Therefore, the Court concludes Ms. Endacott has alleged a possibly viable claim for IIED against Ms. Hanson. In other words, the Court cannot conclude that there is no possibility that Plaintiff would be able to establish a cause of action for IIED against Ms. Hanson. *See Montano*, 2000 LEXIS 6852, at *5 (10th Cir. 2000) (explaining the "standard [for fraudulent joinder] is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6).").

Because the Court finds there may be a viable claim for IIED alleged against Ms. Hanson, it will not discuss the remaining claims asserted in the Complaint.

B. *Amount in Controversy*

Finally, Ms. Endacott argues Wells Fargo cannot prove the amount in controversy is more than $75,000.  (Doc. 25) at 4–5.  In support, Ms. Endacott claims Wells Fargo's admission that it has attempted to reimburse Ms. Endacott for the stolen funds constitutes an admission that the amount in controversy is $0.  *Id.*  The Court disagrees.

Where the complaint does not specify the damages owed, the party asserting federal jurisdiction must prove by a preponderance of evidence jurisdictional facts showing that the amount in controversy may exceed $75,000.  *McPhail v. Deere & Co.*, 529 F.3d 947, 953–55 (10th Cir. 2008) ("[D]efendant must affirmatively establish jurisdiction by proving jurisdictional *facts* that made it *possible* that $75,000 was in play[.]) (original emphasis).  The amount in controversy "is an estimate of the amount that will be put at issue in the course of litigation." *Id.* at 956.  A defendant may prove these jurisdictional facts from:

> Contentions, interrogatories or admissions in state court; by calculation from the complaint's allegations[;] by reference to the plaintiff's informal estimates or settlement demands[;] or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy plaintiff's demands.

*Id.* at 954 (citation omitted).  In this case, Ms. Endacott alleges that over $154,000 were stolen from her Wells Fargo account.  (Doc. 1-2) at 7.  She seeks attorney's fees, punitive, compensatory, and treble damages.  *Id.* at 14.  Wells Fargo stated it tendered payment of all funds to the Plaintiff prior to the filing of this suit, however, the exact amount of funds paid was not stated.  To the contrary, Ms. Endacott alleges "Wells Fargo has made it impossible" to determine the extent of her losses.  *Id.* at 9.  Importantly, Ms. Endacott has not offered to stipulate to damages less than $75,000.  (Doc. 26) at 9.  *See Merced v. Germania Ins.*, 2023 LEXIS 127465, at *6 (D.N.M.) ("[A] stipulation or offer of settlement by the plaintiff can be considered as evidence of an otherwise ambiguous damages amount at the time of removal").

6

Considering the allegations, the Court concludes, by a preponderance of the evidence, that the amount in controversy is more than $75,000.

III.    *Conclusion*

      For the reasons discussed above, the Court grants Ms. Endacott's Motion to Remand. Pursuant to 28 U.S.C. § 1447(c), the Court hereby remands this case to the First Judicial District Court for the State of New Mexico.  A separate Order of Remand will follow.

      IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE